IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CAROL S. WILLIAMS,                        )
     Plaintiff,                            )
                                     )
                                      )
      v.                                    )      Civil No. 3:18cv669 (REP)
                                        )
NANCY A. BERRYHILL,                        )
Acting Commissioner of Social Security,    )
     Defendant.                            )
_____)

## REPORT AND RECOMMENDATION

On September 1, 2015, Carol S. Williams ("Plaintiff") applied for Social Security Disability Benefits ("DIB"), alleging disability from arthritis, high blood pressure, high cholesterol, left hip pain, carpel tunnel syndrome and right knee pain, with an alleged onset date of June 1, 2015. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in: (1) affording little weight to the opinion of Plaintiff's treating physician, Malalai Azmi, M.D.; (2) assessing the opinions of the state agency physicians; and, (3) failing to account for Plaintiff's need for an assistive walking device in the ALJ's residual functional capacity ("RFC") assessment. (Mem. in Support of Pl.'s Mot. For Summ. J. ("Pl.'s Mem.") (ECF No. 17) at 9-16.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for

summary judgment, rendering the matter ripe for review.[1]  For the reasons that follow, the Court

recommends that Plaintiff's Motion for Summary Judgment (ECF No. 16) be GRANTED, that

Defendant's Motion for Summary Judgment (ECF No. 18) be DENIED and that the final

decision of the Commissioner be REVERSED and REMANDED.

## I.    PROCEDURAL HISTORY

On September 1, 2015, Plaintiff filed an application for DIB.  (R. at 193-96.)  The SSA

denied these claims initially on October 15, 2015, and again upon reconsideration on January 7,

2016.  (R. at 98-109.)  At Plaintiff's written request, the ALJ held a hearing on April 6, 2017.

(R. at 35-84, 133-34.)  On October 16, 2017, the ALJ issued a written opinion, denying

Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because

she could perform work existing in significant numbers in the national economy.  (R. at 20-30.)

On July 31, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's

decision as the final decision of the Commissioner subject to review by this Court.  (R. at 1-3.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio v.*

*Colvin,* 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

---

[1]    The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (holding that the substantial-evidence inquiry requires case-by-case consideration, with deference to the presiding ALJ's credibility determinations). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists.  20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation).  To summarize, at step one, the ALJ looks at the claimant's current work activity.  § 404.1520(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  § 404.1520(a)(4)(ii).  Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii).  Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(a).  At step four, the ALJ assesses whether the claimant can perform her past work given her RFC.  § 404.1520(a)(4)(iv).  Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy.  § 404.1520(a)(4)(v).

### III.    THE ALJ'S DECISION

On April 6, 2017, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (R. at 35-84.)  On October 16, 2017, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R. at 20-30.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim.  (R. at 22-30.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2015 — the amended alleged onset date.  (R. at 22.)  At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis and obesity.  (R. at 22.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1.  (R. at 22-23.)

4

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. Specifically, Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. (R. at 23.) Plaintiff could stand and walk for six hours and sit for six hours during an eight-hour workday, and she could periodically alternate between sitting and standing at will while remaining on task. (R. at 23.) Plaintiff could push and pull as much as she could lift and carry, but she could never operate foot controls with either foot. (R. at 23.) Plaintiff could occasionally climb ramps and stairs, but she could never climb ladders, ropes or scaffolds. (R. at 23.) Plaintiff could occasionally stoop, but she could never kneel crouch or crawl, and she could never work at unprotected heights. (R. at 23.) Plaintiff could occasionally work with moving mechanical parts and in vibration. (R. at 23.) Lastly, the ALJ limited Plaintiff to unskilled work due to pain. (R. at 23.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 29.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 29-30.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 30.)

## IV.    ANALYSIS

Plaintiff, age fifty-four at the time of this Report and Recommendation, previously worked as a correctional officer. (R. at 193, 209.) She applied for Social Security Benefits, alleging disability from arthritis, high blood pressure, high cholesterol, left hip pain, carpel tunnel syndrome and right knee pain with an alleged onset date of June 1, 2015. (R. at 207-08.) Plaintiff's appeal to this Court alleges that the ALJ erred in:  (1) affording little weight to the opinion of Plaintiff's treating physician, Dr. Azmi; (2) assessing the opinions of the state agency physicians; and, (3) failing to account for Plaintiff's need for an assistive walking device in the

5

ALJ's RFC assessment.  (Pl.'s Mem. at 9-15.)   For the reasons set forth below, the ALJ erred in her decision.

### A.     The ALJ Provided an Insufficient Explanation for Affording Little Weight to Dr. Azmi's Opinion.

Plaintiff argues that the ALJ erred in assigning little weight to Dr. Azmi's opinion and provided insufficient reasoning for doing so.  (Pl.'s Mem. at 9.)  Defendant asserts that the ALJ provided legally sufficient reasoning for assigning Dr. Azmi's opinion little weight and that substantial evidence supports the ALJ's opinion.  (Def.'s Mot. for Summ. J. and Br. in Supp. (ECF No. 18) ("Def.'s Mem.") at 15-22.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527.  When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.  § 404.1527(c).  If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  §§ 404.1527(c)(2)-(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight.  SSR 06-03p.[2]  Acceptable medical

_____

[2]      Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-03p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f).  82 Fed. Reg. 5844-

sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. SSR 06-03p. The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. SSR 06-03p; § 404.1527(f).[3]

A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; § 404.1527(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence or when it is not otherwise well-supported. § 404.1527(c)(3)-(4).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.*

---

01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her claim on September 1, 2015, before this regulation took effect. (R. at 193-96.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

[3]     The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. § 404.1527(f). The given examples constitute a non-exhaustive list. SSR 06-03p.

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. § 404.1527(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant is disabled as that term is defined under the Act. § 404.1527(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

Dr. Azmi treated Plaintiff multiple times between 2015 and 2017. (R. at 293, 296, 299, 447, 661-78). On February 14, 2017, Dr. Azmi completed a medical source statement for Plaintiff. (R. at 549-50.) Dr. Azmi listed chronic lower back pain with radiculopathy as Plaintiff's primary ailments. (R. at 549.) Utilizing a check-the-box format, Dr. Azmi further indicated that Plaintiff could occasionally sit, stand and walk, never stoop, and infrequently climb with assistance. (R. at 549.) Dr. Azmi opined that Plaintiff could infrequently carry one to five pounds, occasionally carry six to ten pounds and never carry more than ten pounds. (R. at 549.) However, Dr. Azmi believed that Plaintiff could frequently use her hands for fine and gross manipulation and frequently raise both arms over her shoulders. (R. at 549.) Dr. Azmi checked a box describing Plaintiff's pain as severe and he opined that Plaintiff would be off task 70 percent of the time during an eight-hour workday due to pain. (R. at 550.) Further, Dr. Azmi believed that Plaintiff would need to elevate her legs over her waist for approximately three to four hours per day. (R. at 550.) Lastly, Dr. Azmi opined that Plaintiff would need to take

unscheduled break periods during an eight-hour workday and required an assistive device to ambulate. (R. at 550.)

The ALJ assigned little weight to Dr. Azmi's opinion because it lacked consistency with the record evidence as a whole, and because Dr. Azmi used a check-the-box form to complete his opinion. (R. at 27.) Plaintiff argues that the ALJ provided legally insufficient reasoning for discounting Dr. Azmi's opinion, and the Court agrees. (Pl.'s Mem. at 11-15.)

First, the ALJ reasoned that Dr. Azmi's opinion "[was] inconsistent with the medical evidence of record as a whole, which supports a light exertional level with the additional [limitations included in the RFC]." (R. at 27.) But the ALJ failed to cite to or explain which medical records she found inconsistent with Dr. Azmi's opinion. *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016). Nor did the ALJ identity a specific category of evidence (i.e., Dr. Azmi's own treatment notes) to support her reasoning. *See Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) ("While the ALJ did not cite specific pages in the record, his explanation relied on and identified a particular category of evidence[: the doctor's office notes].").

The Fourth Circuit deemed similar reasoning inadequate in *Monroe*, 826 F.3d at 191, and *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018). In *Monroe*, the ALJ afforded a consultative examiner's opinion limited weight, because "the objective evidence [and] the claimant's treatment history did not support [the doctor's] findings." 826 F.3d at 191. The ALJ's failure to "specify what 'objective evidence' or what aspects of [Plaintiff's] treatment history he was referring to" deprived the court of its ability to engage in meaningful judicial review and required remand. *Id.* The ALJ in *Woods* assigned a doctor's opinion some weight, "because it [was] rather vague and general in nature," but the ALJ failed to discuss "what aspects of [the doctor's] opinion he found overly vague." 888 F.3d at 695. This lack of explanation

likewise required remand. *Id.* District courts in this Circuit have deemed similar reasoning

legally insufficient. *See Lewis v. Colvin*, 2013 WL 6839505, at *5 (D. Md. Dec. 23, 2013)

(requiring remand, because "the ALJ state[d] that Dr. Alkaitis's opinion '[was] not entirely

consistent with the medical evidence as a whole,' but [did] not specify what that evidence

[was]"); *Pearson v. Colvin*, 2013 WL 3243550, at *4 (E.D.N.C. June 26, 2013) (explanation that

doctor's opinion "[was] out of proportion to the longitudinal and objective record" lacked

sufficient specificity); *Wilson v. Astrue*, 2012 WL 4717873, at *13 (E.D. Va. Oct. 1, 2012)

(explanation that state agency physicians' opinions deserved significant weight because they

"[were] consistent with the record as a whole" provided inadequate basis for judicial review).

The ALJ's second reason for discounting Dr. Azmi's opinion — use of a check-the-box

form, (R. at 27) — does not rescue the ALJ's decision from remand. Although the ALJ correctly

stated that "a checklist of residual functional capacity is in itself entitled to little weight when not

accompanied by medical examinations or reports of clinical findings supporting the opinion or a

rationale," (R. at 27 (citing *Montgomery v. Comm'r of Soc. Sec.*, Case No. 2:05cv545, at 7-8

(E.D. Va. Mar. 23, 2007)); *see also Barefoot v. Berryhill*, 2018 WL 2411000, at *9 (E.D. Va.

Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 1915932 (E.D. Va. Apr. 23,

2018) ("Such check-the-box forms without any medical explanation or justification are not

entitled to great weight[.]"), the ALJ again failed to specify which evidence she found

unsupportive of Dr. Azmi's opinion. And the fact that the ALJ summarized Plaintiff's treatment

history elsewhere in her opinion does not relieve her of the duty to "build an accurate and logical

bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v.

Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *Reynolds v. Berryhill*, 2017 WL 1128602, at *5 (N.D.

W. Va. Mar. 24, 2017). Because the Court cannot "speculate as to how the ALJ applied the law

10

to its findings or . . . hypothesize the ALJ's justifications that would perhaps find support in the record," the ALJ's lack of explanation requires remand. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

### B.   The ALJ Supplied Appropriate Reasoning for Affording the State Agency Physicians' Opinions Partial Weight.

In challenging the weight afforded to Dr. Azmi's opinion, Plaintiff indirectly challenges the weight that the ALJ afforded to the state agency physicians' opinions. Specifically, Plaintiff takes issue with the ALJ's failure to expressly consider the form of the state agency physicians' opinions and the fact that the ALJ afforded those opinions more weight than Dr. Azmi's opinion, even though the state agency physicians neither reviewed the complete medical record nor examined Plaintiff. (Pl.'s Mem. at 14; Pl.'s Reply to Def.'s Mot. for Summ. J. (ECF No. 19) at 2.) Defendant responds that the ALJ appropriately evaluated and relied upon the opinions of the state agency physicians. (Def.'s Mem. at 19-20.)

State agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1). Therefore, when considering the opinion of a state agency medical consultant, the ALJ must evaluate those findings just as he would for any other medical opinion. § 404.1513a(b)(1). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ is required to explain the weight given to state agency opinions. § 404.1527(e); *see* § 404.1513a (listing rules that apply to state agency physicians).

On October 15, 2015, Tony Constant, M.D., completed Plaintiff's initial disability determination. (R. at 93-96.) Dr. Constant opined that Plaintiff had the RFC to perform light work. (R. at 95-96.) Specifically, Dr. Constant opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, Plaintiff could stand and walk for six hours and

sit for six hours during an eight-hour work day and could occasionally climb ramps, stairs,

ladders, ropes and scaffolds. (R. at 94.) Dr. Constant also found that Plaintiff had no limitation

on balancing and could frequently stoop, occasionally kneel and crouch, and never crawl. (R. at

94.) Finally, Dr. Constant opined that Plaintiff had no manipulative, visual, communicative or

environmental limitations. (R. at 95.) On January 7, 2016, Luc Vinh, M.D., evaluated Plaintiff

on reconsideration. (R. at 105-06.) Dr. Vinh made the same findings as Dr. Constant, except

that Dr. Vinh opined that Plaintiff could occasionally stoop and never climb ladders, ropes or

scaffolds. (R. at 94, 105.)

The ALJ afforded the state agency physicians' opinions partial weight "to the extent that

they recognize [Plaintiff's] capacity for light exertional work like activities." (R. at 26.) But the

ALJ ultimately included additional limitations in the RFC, because Plaintiff's hearing testimony

and medical evidence regarding Plaintiff's musculoskeletal issues "depicts greater limitations"

than the state agency physicians assessed. (R. at 26-27.) The ALJ further discounted the state

agency physicians' opinions, because neither Dr. Constant nor Dr. Vinh had the opportunity to

personally examine Plaintiff or to review the complete medical evidence of record. (R. at 27.)

The Court finds no support for Plaintiff's proposition that the ALJ erred by not

considering and discussing the form of the state agency physicians' opinions. (Pl.'s Mem. at 14;

Pl.'s Reply at 2 ("If the ALJ would like to consider the form of [Dr. Azmi's] opinion, the ALJ

should consider the form of every opinion and not just the disabling opinion.").) Rather, the ALJ

appropriately considered the regulatory factors set forth in § 404.1527, including the state agency

physicians' limited examining and treatment relationship with Plaintiff and the lack of

consistency between the state agency physicians' opinions and the record as a whole. Moreover,

the ALJ specifically pointed to medical records relating to Plaintiff's musculoskeletal issues and

Plaintiff's hearing testimony as evidence supporting the ALJ's finding that Plaintiff suffers from greater limitations than assessed by the state agency physicians. (R. at 26-27.) Thus, the Court finds no error in the ALJ's explanation as to the weight afforded to Dr. Constant's and Dr. Vinh's opinions. Moreover, substantial evidence supports the ALJ's assignment of weight to the state agency physicians' opinions.

First, Plaintiff's medical records support the ALJ's decision to assign partial weight to the state agency physicians' opinions. On June 4, 2014, Plaintiff presented to Manjit S. Dhillon, M.D., at Colonial Orthopedics, for a follow-up visit after Plaintiff tore the medial meniscus in her right knee. (R. at 287.) Plaintiff reported that the knee brace given to her during her previous appointment provided some relief. (R. at 287.) On physical examination, Plaintiff walked with a limp and displayed some tenderness over the lateral joint line. (R. at 288.) But Plaintiff exhibited normal bilateral muscle strength, tone and sensation. (R. at 288.) Dr. Dhillon performed an arthroscopy and debridement surgery on Plaintiff's right knee on July 7, 2014. (R. at 282, 286.)

On August 26, September 2 and September 9, 2014, Plaintiff presented to Brittany L. Revels, P.A., for post-operative evaluation. (R. at 274, 276, 278.) Plaintiff's knee appeared swollen, but Plaintiff could bear full weight on the knee, and her surgical wounds healed well. (R. at 274, 276, 278.) Plaintiff walked with a limp and used an assistive device, but she otherwise displayed normal reflexes, coordination and intact sensation. (R. at 275, 277, 279.)

On October 21, 2014, Plaintiff returned to Dr. Dhillon, complaining of a swollen and stiff right knee. (R. at 272.) On physical examination, Dr. Dhillon observed no joint pain, redness, stiffness, swelling or muscle cramps. (R. at 273.) Plaintiff walked with a limp and used an assistive device to ambulate, but she had normal posture. (R. at 273.) Dr. Dhillon observed no

generalized swelling or edema in Plaintiff's extremities, and Plaintiff had normal reflexes and

coordination. (R. at 273.) Although Plaintiff experienced some tenderness and a decreased

range of motion in her right knee, she displayed intact sensation. (R. at 273.) Dr. Dhillon

instructed Plaintiff to ice her knee and avoid impact activities and prescribed Mobic for

Plaintiff's pain. (R. at 273.)

On December 23, 2014, Plaintiff returned to Dr. Dhillon, complaining of worsening right

knee pain. (R. at 269-70.) On physical examination, Plaintiff displayed no joint pain, swelling,

stiffness or cramps, but she experienced minimal tenderness in the right knee. (R. at 270.)

Plaintiff also limped and used an assistive device to ambulate. (R. at 270.) Dr. Dhillon injected

Plaintiff's right knee with lidocaine and other medication and encouraged Plaintiff to perform

nonimpact, home exercises until her follow-up appointment two months later. (R. at 270.)

On January 2, 2015, Plaintiff presented to Dr. Azmi, complaining of right knee pain. (R.

at 299.) Plaintiff told Dr. Azmi that she did not diet or exercise as instructed, because "she ha[d]

no time." (R. at 299.) On physical examination, Plaintiff displayed a normal range of motion in

her extremities and spine. (R. at 299.) On January 26, 2015, Plaintiff presented to Bradley S.

Ellison, M.D., at Advanced Orthopaedic Centers for evaluation of her right knee. (R. at 431.)

Plaintiff reported that prolonged walking, sitting or standing, transitioning from sitting to

standing, driving and walking up the stairs aggravated her pain. (R. at 431.) Dr. Ellison

observed Plaintiff walk with an antalgic gait, but he made no mention of her using an assistive

device. (R. at 433.) Dr. Ellison noted that Plaintiff would need to wear a hinged knee brace

during the workday. (R. at 430.) In the pain questionnaire completed by Plaintiff before her

appointment, Plaintiff noted that she experienced muscle cramps and joint stiffness or swelling,

but she did not report difficulty walking. (R. at 438.) Dr. Ellison diagnosed Plaintiff with

osteoarthritis in her right knee. (R. at 433.)

On June 16, 2015, Plaintiff presented to Dr. Azmi, complaining of left hip pain. (R. at

296.) Plaintiff displayed a satisfactory range of motion in her back and a normal range of motion

in her extremities. (R. at 296.) Dr. Azmi noted that Plaintiff did not exercise or follow a diabetic

diet. (R. at 296.) Plaintiff told Dr. Azmi that she did not take her medication regularly and that

one medication — Simvastatin — made her nauseous. (R. at 296.) Dr. Azmi performed a

trigger point injection on Plaintiff's left sacroiliac joint. (R. 297.) Because Plaintiff complained

of hip and back pain, Dr. Azmi ordered X-rays of her pelvis and lumbosacral spine. (R. at 318.)

The images showed no fracture or dislocation in Plaintiff's pelvis. (R. at 318.) Plaintiff's back

x-ray revealed degenerative disc disease at L3-L4 and mild subluxation. (R. at 318.)

On July 9, 2015, Plaintiff presented to William Brickhouse, M.D., complaining of right

knee and left hip pain. (R. at 417.) Plaintiff reported that medication did not improve her pain

much, and she told Dr. Brickhouse that she had difficulty picking objects off of the floor,

maneuvering stairs and getting in and out of the car. (R. at 417.) On physical examination,

Plaintiff displayed a decreased range of motion and strength in her right knee and leg, but she

exhibited normal flexion, extension, rotation and muscle strength in her left hip. (R. at 419.) Dr.

Brickhouse assessed that Plaintiff's knee pain and altered gait caused tendonitis on her left hip.

(R. at 420.) Dr. Brickhouse injected a steroid into Plaintiff's knee to alleviate pain and advised

Plaintiff to try physical therapy to improve her hip pain. (R. at 420.)

On July 16, 2015, Plaintiff presented to Dr. Azmi for a follow-up appointment regarding

her diabetes. (R. at 293.) Plaintiff reported that Tramadol helped her pain for brief periods of

time. (R. at 293.) Dr. Azmi observed that Plaintiff had normal range of motion in her

15

extremities and spine.  (R. at 293.)  Later that month, on July 30, 2015, Plaintiff presented to

Matthew K. Joseph, M.D., at Virginia Medical Group, complaining of chest pain, hypertension,

hypercholesterolemia and diabetes.  (R. at 345.)  Plaintiff appeared in no acute distress and

although she complained of joint pain, joint swelling and muscle cramps, she denied back pain

and muscle pain.  (R. at 346.)  Dr. Joseph instructed Plaintiff to exercise daily and requested that

she quit smoking.  (R. at 348.)  Plaintiff had an echocardiogram on August 7, 2015, at Virginia

Medical Group, which returned unremarkable results.  (R. at 365-66.)

On August 13, 2015, Plaintiff presented to Dr. Brickhouse, complaining of continued

pain in her right knee, left hip and lower back.  (R. at 413.)  Dr. Brickhouse noted that Plaintiff

declined physical therapy, because it did not work for her in the past.  (R. at 413.)  On physical

examination, Plaintiff again exhibited normal strength and range of motion in her left hip.  (R. at

415.)  Although she displayed reduced muscle strength in her right quadricep and hamstring,

Plaintiff otherwise exhibited normal stability and range of motion when Dr. Brickhouse

examined her right knee.  (R. at 415.)  Dr. Brickhouse prescribed additional pain medication to

Plaintiff and referred her to another physician for her back pain.  (R. at 416.)

On August 19, 2015, Plaintiff returned to Dr. Joseph, complaining of sharp chest pain.

(R. at 383.)  Although Plaintiff experienced shortness of breath with exertion, she told Dr. Joseph

that she could walk up to half a mile.  (R. at 383.)  Dr. Joseph noted that Plaintiff remained non-

compliant with his request for her to quit smoking.  (R. at 383.)  Plaintiff denied joint pain, joint

swelling, muscle pain and muscle cramps.  (R. at 384.)  On physical examination, Plaintiff

appeared in no acute distress.  (R. at 384.)  Dr. Joseph again instructed Plaintiff to exercise daily

and quit smoking.  (R. at 386.)

Plaintiff presented to Warren B. Kirby, M.D., at Advanced Orthopaedic Centers for assessment of her back pain on August 27, 2015. (R. at 396.) On physical examination, Plaintiff experienced pain and tenderness in the lumbar spine but had normal sensation in the lower extremities. (R. at 398.) Plaintiff could stand heel to toe bilaterally with support. (R. at 398.) Dr. Brickhouse diagnosed Plaintiff with lumbar radiculitis on the left side, lumbar spondylosis and lumbar spondylolisthesis. (R. at 398.)

On September 24, 2015, Plaintiff returned to Advanced Orthopaedic Centers for a follow-up regarding her right knee pain. (R. at 394.) Plaintiff reported that she experienced muscle cramps, joint stiffness and swelling. (R. at 393.) She also continued to smoke half a pack of cigarettes per day. (R. at 392.) On October 6, 2015, Plaintiff had an MRI of her right knee. (R. at 473.) Dr. Brickhouse observed a generalized increased size and signal of Plaintiff's anterior cruciate ligament, complex tearing of the lateral meniscus and grade 2 signal in the body of the medial meniscus. (R. at 474.)

On October 14, 2015, Tina G. Walters, P.T., reported that Plaintiff made no significant gains with her physical therapy and continued to complain of pain in her lower back that radiated into the left lower extremity. (R. at 475.) On October 15, 2015, Plaintiff presented to Dr. Kirby, complaining of back pain radiating to her left side. (R. at 463.) Plaintiff told Dr. Kirby that bending, sitting and twisting aggravated her back pain, but laying down provided some relief. (R. at 463.) On physical examination, Dr. Kirby observed that Plaintiff walked with an abnormal gait, but his treatment notes made no mention of an assistive walking device. (R. at 465.) Plaintiff displayed a reduced range of motion in the lumbar spine and experienced pain with extension. (R. at 465.) Dr. Kirby instructed Plaintiff to continue her current lumbar home

17

exercise program and to continue taking Nambumtone, Diazepam and Tramadol for pain. (R. at 465.)

On October 25, 2015, Plaintiff underwent an MRI of her spine, which revealed left foramina disc extrusion at L3-L4, mild left posterior lateral disc bulge at L4-L5 and small broad-based left posterior lateral disc protrusion at L5-S1. (R. at 479.) On October 29, 2015, Plaintiff returned to Dr. Brickhouse for a follow-up appointment regarding her knee pain. (R. at 476.) Plaintiff experienced muscle cramps, joint stiffness and swelling, and some numbness and tingling. (R. at 477.) On examination of Plaintiff's right knee, Dr. Brickhouse observed normal alignment and normal flexion and extension with reduced muscle strength. (R. at 477-78.)

On November 3, 2015, Plaintiff presented to Dr. Kirby, again complaining of back pain radiating to her left side. (R. at 483.) Plaintiff reported that walking, activities of daily living, bending, twisting and standing aggravated her back pain; however, medication alleviated her pain, and she suffered no side effects from her medication. (R. at 483.) On physical examination, Dr. Kirby observed that Plaintiff could toe and heel walk on both sides and made no mention of an assistive device. (R. at 485.) On November 9, 2015, Plaintiff visited the Richmond Spine Intervention and Pain Center to receive another steroid injection for back pain. (R. at 493-95.) Plaintiff reported difficulty walking, climbing stairs, dressing and bathing, but she reported no difficulties in running errands alone. (R. at 537.) Peyman Nazmi, M.D., reported that Plaintiff tolerated the procedure well and that Plaintiff departed the office after thirty minutes with no complaints and moving all four extremities. (R. at 495.)

On November 11, 2015, Plaintiff returned to Dr. Azmi for a pre-operative examination for right knee meniscus surgery. (R. at 447.) Plaintiff appeared in no acute stress, could move all her extremities and had a normal range of motion in her spine. (R. at 447.) Dr. Azmi's

treatment notes make no mention of Plaintiff's ability to ambulate or whether she used an assistive walking device. (R. at 447.) On November 16, 2019, Dr. Brickhouse performed arthroscopic surgery on Plaintiff's right knee. (R. at 497.) Plaintiff experienced no complications relating to the surgery. (R. at 498.)

Plaintiff returned to Dr. Brickhouse on November 24, 2015, for a post-operative evaluation. (R. at 514.) Plaintiff reported significant improvement and told Dr. Brickhouse that she maintained her daily home exercise program. (R. at 514.) On examination, Plaintiff walked with a normal gait and displayed a normal range of motion in her right knee. (R. at 514.) Dr. Brickhouse noted that Plaintiff made "good progress" and he advised her to ice her knee regularly. (R. at 514.) Plaintiff presented to Dr. Brickhouse on December 15, 2015, for another post-operative check-up. (R. at 526.) Plaintiff reported "doing well" since her previous visit, though she experienced soreness and swelling on occasion. (R. at 526.) Plaintiff also told Dr. Brickhouse that she experienced instability with walking and that prolonged walking aggravated Plaintiff's knee. (R. at 526.) But Plaintiff again displayed a normal gait on examination. (R. at 526.) Though she exhibited reduced muscle strength in her quadriceps and hamstring, Plaintiff had a normal range of motion in her right knee. (R. at 526.) Dr. Brickhouse advised Plaintiff to continue her home exercise program. (R. at 526.)

On February 11, 2016, Plaintiff presented to Dr. Nazmi, complaining of lower back and left leg pain. (R. at 545.) Although Plaintiff walked with an antalgic gait, Dr. Nazmi made no mention of use of an assistive device. (R. at 547.) Dr. Nazmi gave Plaintiff another steroid injection in her back to alleviate her pain. (R. at 548.)

On May 4, 2016, Plaintiff presented to Dr. Azmi, complaining of right foot pain. (R. at 670.) Dr. Azmi observed mild swelling in Plaintiff's foot, but Plaintiff denied numbness and

tingling. (R. at 670.) Plaintiff also reported that soaking her foot in warm salt water provided some relief. (R. at 670.) Dr. Azmi instructed Plaintiff to continue taking her pain medication and soaking her foot, and he prescribed a Medrol dose pack. (R. at 671.) On May 12, 2016, Plaintiff returned to Dr. Azmi, reporting improvement in her foot pain. (R. at 667.) Dr. Azmi noted that Plaintiff could move all extremities and her physical examination returned unremarkable results. (R. at 667.)

On June 13, 2016, Plaintiff presented to Adam Crowl, M.D., complaining of sharp pain in her lumbar spine that radiated to her left hip and thigh. (R. at 654.) Plaintiff experienced muscle cramps, joint stiffness and swelling. (R. at 657.) Dr. Crowl described Plaintiff's gait as "abnormal" and "antalgic," but he noted that Plaintiff did not use an assistive device. (R. at 654.) After examining Plaintiff and reviewing images of her lumbar spine, Dr. Crowl diagnosed Plaintiff with lumbar spondylolisthesis, spinal stenosis and lumbar radiculitis. (R. at 655.) Dr. Crowl discussed the possibility of back surgery with Plaintiff. (R. at 655.)

On August 16, 2016, Plaintiff presented to Dr. Azmi for a follow-up appointment regarding her back pain. (R. at 664.) Dr. Azmi noted that Plaintiff moved all extremities well and made no mention of an assistive device. (R. at 664.) On September 27, 2016, Plaintiff returned to Dr. Azmi for a follow-up visit concerning anemia. (R. at 661.) Plaintiff complained of back pain and told Dr. Azmi that injections no longer improved her pain. (R. at 661.) On examination, Dr. Azmi noted that Plaintiff moved all extremities. (R. at 661.)

On November 25, 2016, Plaintiff presented to the emergency room at Southside Regional Medical Center, complaining of left foot pain and swelling. (R. at 601.) Plaintiff told treating staff that bearing weight on the left side and walking exacerbated her pain. (R. at 601.) On physical examination, Plaintiff exhibited a normal range of motion and normal strength, but she

experienced moderate swelling in her left foot. (R. at 602.)  Treatment notes describe Plaintiff's

gait as "shuffling" and "slow." (R. at 651.)  X-rays of Plaintiff's foot revealed nonspecific soft

tissue swelling and degenerative calcaneal, but otherwise appeared normal. (R. at 603.)  The

hospital discharged Plaintiff in stable condition that same day and instructed Plaintiff to follow-

up with her primary care physicians. (R. at 603-04.)

The ALJ adopted portions of Dr. Constant's and Dr. Vinh's opinions in the RFC,

including the state agency physicians' findings regarding Plaintiff's ability to lift and carry

twenty pounds occasionally and ten pounds frequently, to push and pull as much as she could lift

and carry, to stand and walk for six hours and sit for six hours during an eight-hour workday and

to occasionally climbs ramps and stairs. (R. at 23, 94-95, 105-06.)  The ALJ also included Dr.

Vinh's finding that Plaintiff could occasionally stoop. (R. at 23, 105.)  Plaintiff's normal and

often unremarkable physical examinations support the ALJ's decision to credit these aspects of

the state agency physicians' opinions. (*See* R. at 293 (noting that Plaintiff appeared well

developed, in no acute distress and displayed a normal range of motion in July 2015), 296 (same

in June 2015), 299 (same in January 2015), 384 (unremarkable physical examination in August

2015), 661 (same in September 2016), 664 (same in August 2016), 667 (same in May 2016), 673

(same in March 2016)).

The record also reflects that Plaintiff displayed reduced muscle strength, reduced range of

motion, difficulty walking and foot swelling at different times throughout her treatment history.

(R. at 270, 273, 275, 277, 279, 415, 420, 433, 465, 478, 526, 547, 602, 654, 670.)  And imaging

of Plaintiff's musculoskeletal system revealed, *inter alia*, complex tearing of the lateral meniscus

in Plaintiff's right knee, (R. at 474), degenerative disc disease at L3-L4 and mild subluxation in

Plaintiff's lumbosacral spine, (R. at 318), as well as soft tissue swelling and degenerative

21

calcaneal in Plaintiff's left foot, (R. at 603). These records support the state agency physicians'
findings that Plaintiff could never crawl, (R. at 94), as well as Dr. Vinh's finding that Plaintiff
could never climb ladders, ropes and scaffolds, (R. at 105), and the ALJ adopted both of those
limitations in the RFC, (R. at 23). These records further support the ALJ's finding that Plaintiff
suffered from additional limitations (i.e., alternating between sitting and standing and never
operating foot controls) not assessed by the state agency physicians. (R. at 26-27.)

Moreover, the ALJ noted that the state agency physicians did not personally examine
Plaintiff or have the opportunity to review the complete medical record. (R. at 27.) Indeed, after
the state agency physicians produced their opinions in late 2015 and early 2016, Dr. Crowl
diagnosed Plaintiff with lumbar spondylolisthesis, spinal stenosis and lumbar radiculitis, and
Plaintiff continued to have difficulty walking and experienced swelling in her feet. (R. at 545,
601-604, 655, 670-71.) The state agency physicians did not have the opportunity to review these
records and the ALJ discounted their opinions accordingly.

Finally, the ALJ cited to Plaintiff's hearing testimony in support of her decision to afford
the state agency physicians' opinions partial weight. At the hearing, Plaintiff testified that she
had a driver's license and drove once or twice per week. (R. at 45.) Plaintiff testified that she
could no longer work due to the severe pain radiating from her lower back to her legs. (R. at 51.)
Plaintiff stated that standing or sitting for long periods of time exacerbated her knee and back
pain, and she reported that medication did not particularly improve her pain. (R. at 51-53, 56.)

Plaintiff testified that she wore a back brace at home while sweeping or if she had to go
to the store. (R. at 59.) Plaintiff stated that she could lift a gallon of milk, stand for fifteen to
twenty minutes and sit for about thirty minutes. (R. at 63.) Plaintiff also stated that she had to
alternate between sitting, standing and elevating her legs. (R. at 70.) On a typical day, Plaintiff

22

stated that she took her medication and washed and dressed herself, but she avoided taking a shower unless someone could help her get out of the tub. (R. at 64.) Plaintiff prepared simple meals for herself and washed dishes while leaning across the sink. (R. at 65.) Plaintiff also performed household chores such as sweeping, vacuuming and laundry, but she required rest periods due to her pain. (R. at 65-67.) Plaintiff testified that she experienced severe muscle spasms about once per month that caused her to be unable to move or perform any activities. (R. at 54, 72.) This testimony, coupled with the medical records, comports with the ALJ's finding that Plaintiff experienced additional limitations not assessed by the state agency physicians and supports the ALJ's decision to afford Dr. Constant's and Dr. Vinh's opinions partial weight.

Accordingly, the ALJ did not err in assessing the state agency physicians' opinions.

## C.   The ALJ Did Not Err by Excluding a Hand-held Assistive Walking Device from the RFC.

Plaintiff argues that the ALJ failed to properly assess Plaintiff's need for an assistive walking device. (Pl.'s Mem. at 14-15.) Defendant responds that the ALJ appropriately considered Plaintiff's ability to stand and walk without an assistive walking device, and substantial evidence supports the ALJ's decision to exclude use of an assistive walking device from the RFC. (Def.'s Mem. at 17, 23.)

The ALJ's RFC findings should include limitations that find support in the record. *Johnson*, 434 F.3d at 659. Use of a hand-held assistive walking device, like a cane, may affect an individual's RFC by limiting her ability to lift, carry, push and pull. *Fletcher v. Colvin*, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(J)(4)). However, the ALJ need only consider "medically required" assistive walking devices when making the RFC assessment. *Id.* (quoting SSR 96-9p).

To establish a medical requirement, the claimant must present medical documentation

(1) supporting her need for an assistive walking device and, (2) describing the circumstances that require it. *Id.* The ALJ then "must always consider the particular facts of a case." *Wimbush v. Astrue*, 2011 WL 1743153, at *2 (W.D. Va. May 6, 2011) (quoting SSR 96-9p). Given the fact-specific nature of the ALJ's inquiry, neither a prescription for a cane, nor the lack thereof, necessarily determines whether a claimant medically requires an assistive device. *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009)); *Wimbush*, 2011 WL 1743153, at *2-3 (citing SSR 96-9p) (additional citations omitted). The claimant must provide documentation from an approved medical source to establish the basis for her impairment and subsequent need for an assistive walking device. 20 C.F.R § 404.1513; *see also Jones v. Comm'r of Soc. Sec.*, 2011 WL 3273129, at *9 (E.D. Va. June 9, 2011) (finding that, under the regulations, a nurse practitioner did not qualify as an approved medical source for the purpose of establishing the existence of a medical impairment).

If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment. *Fletcher*, 2015 WL 4506699, at *8. "Courts have held claimants to a high burden in supplying the appropriate documentation." *Helms v. Berryhill*, 2017 WL 3038154, at *8 (E.D. Va. June 30, 2017) (finding that the plaintiff did not meet the requirement of producing "an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary" (quoting *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012)), *report and recommendation adopted*, 2017 WL 3032216 (E.D. Va. July 17, 2017); *Staples*, 329 F. App'x at 192 (finding that a doctor's statement that the plaintiff used a cane did not suffice to establish medical necessity)).

In her opinion, the ALJ stated that Plaintiff's medical records revealed that Plaintiff had "the ability to stand, walk and move about normally without the need for a handheld assistive

24

device." (R. at 28.) The ALJ noted that the medical evidence of record revealed "multiple unremarkable physical examinations" and specifically cited to Plaintiff's August 2015 appointment with Dr. Joseph, during which Plaintiff reported that she could walk up to half a mile. (R. at 28 (citing R. at 383).) The ALJ acknowledged treatment notes discussing Plaintiff's difficulty walking, climbing stairs, dressing and bathing, but those treatment notes also reflected that Plaintiff had no difficulty running errands alone. (R. at 28 (citing R. at 537, 547).) The ALJ further noted that Plaintiff's testimony regarding her ability to sweep, do laundry, wash dishes while leaning across the sink and grocery shop supported that Plaintiff "could perform [work] within the limitations of the [RFC]." (R. at 28.) Thus, the ALJ excluded use of an assistive walking device from the RFC. (R. at 23.)

Plaintiff argues that the ALJ should have included use of an assistive walking device in the RFC, because Dr. Azmi checked a box in a medical source statement indicating that Plaintiff required an assistive device to ambulate in February 2017. (R. at 550; Pl.'s Mem. at 15.) In part A of this Report and Recommendation, the undersigned concluded that the ALJ's failure to sufficiently explain her reasoning for affording Dr. Azmi's opinion little weight requires remand. This conclusion would ordinarily dictate that the undersigned likewise remand the issue of whether the ALJ erred in excluding an assistive walking device from the RFC, because the duty to "find facts and resolve conflicts" rests with the ALJ and not the reviewing court. *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (citing *Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"); *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)). But here, Dr. Azmi only checked a box indicating that Plaintiff required an assistive device. (R. at 550.) He did not

describe the circumstances for which Plaintiff required the assistive device as required by SSR 96-9p ("i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information"). SSR 96-9p; (R. at 550.) Because Dr. Azmi's medical source statement plainly does not satisfy Plaintiff's "high burden" to supply documentation establishing that she medically requires an assistive walking device, *Helms*, 2017 WL 3038154, at *8, and because the ALJ provided sufficient discussion about Plaintiff's ability to ambulate without an assistive device, (R. at 28), the Court is not precluded from reviewing whether the ALJ erred in excluding use of an assistive walking device from the RFC.

In addition to Dr. Azmi's opinion, Plaintiff points to her own statements regarding use of a cane, instances in the record where she used an assistive device to ambulate during appointments and Dr. Ellison's January 2015 statement that she would need to wear a hinged knee brace during the workday as evidence that she medically required an assistive walking device. (Pl.'s Mem. at 15.) Plaintiff's argument falls short, however, because "[s]elf-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be 'an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary.'" *Johnson v. Berryhill*, 2017 WL 722063, at *9 (W.D. Va. Feb. 23, 2017) (quoting *Tripp*, 489 F. App'x at 955). Neither the evidence on which Plaintiff relies nor any other evidence in the record established a medical necessity for an assistive walking device. Although Dr. Ellison constituted an approved medical source under § 404.1513, his January 2015 statement pertained to a knee brace — not a hand-held assistive walking device as contemplated by SSR 96-9p. Thus, substantial evidence supports the ALJ's decision to exclude this limitation from the RFC.

Indeed, the Court's own review of the record finds substantial support for the ALJ's exclusion of an assistive walking device from Plaintiff's RFC.  Following Plaintiff's right knee surgery in July 2014, Plaintiff used an assistive device to ambulate during appointments in August, September, October and December 2014, (R. at 270, 273, 275, 277, 279).  Plaintiff displayed an abnormal or antalgic gait in January 2015, (R. at 433), and July 2015, (R. at 420), but those treatment records make no mention of an assistive walking device.  In December 2015, Plaintiff stated in a disability report that she used a cane for assistance, (R. at 228), but Plaintiff's December 23, 2014 appointment with Dr. Dhillon marks the last time in the medical records that Plaintiff's treatment providers observed her ambulate with an assistive device.  (R. at 270.)

In fact, Plaintiff's ability to walk appeared to improve following her second right knee surgery on November 16, 2015.  (R. at 497, 514, 526.)  Although Dr. Brickhouse instructed Plaintiff to use a crutch to aid her post-operative recovery, (R. at 564), Plaintiff walked with a normal gait during her follow-up appointments with Dr. Brickhouse on November 24 and December 15, 2015, and Dr. Brickhouse's treatment notes from those visits make no mention of a crutch or other assistive walking device.  (R. at 514, 526.)  Plaintiff again displayed an antalgic gait during physical examinations in February 2016, (R. at 547), and June 2016, (R. at 654), but she did not use an assistive device to ambulate.  And Plaintiff's physical examinations often revealed normal or unremarkable results, which the ALJ noted in her opinion.  (R. at 26, 28, 293 (July 2016), 296 (June 2015), 299 (January 2015), 384 (August 2015), 415 (August 2015), 661 (September 2016), 664 (August 2016), 667 (May 2016), 673 (March 2016).)  Plaintiff's improved walking ability following her November 2015 surgery, as well as the absence of documentation that Plaintiff used an assistive walking device during appointments after December 2014, supported the ALJ's decision to exclude this limitation from the RFC.

27

Moreover, when the ALJ questioned Plaintiff about her use of assistive devices during the April 2017 hearing, Plaintiff testified only that she wore a back brace at home and to the store. (R. at 59.) She made no mention of a cane, walker or other assistive device. Plaintiff testified that she experienced pain when sweeping and that she leaned against the shopping cart while grocery shopping, but she also testified that she could walk to her mailbox, vacuum and do laundry. (R. at 46-47, 62-67.) This testimony, coupled with Plaintiff's medical records, supported the ALJ's finding that Plaintiff could stand and walk without a hand-held assistive device. Because Plaintiff failed to produce medical evidence supporting her need for an assistive walking device and describing the circumstances that require it, the ALJ did not err by excluding use of an assistive walking device from the RFC.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 16) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 18) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED pursuant to sentence 4 of § 205(g) of the SSA.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

28

by the District Judge except upon grounds of plain error.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  June 17, 2019